# REQUIRED STATEMENT
## TO ACCOMPANY MOTIONS FOR RELIEF FROM STAY

All Cases: Debtor(s) _____Lawrence Versell Webster_____ Case No. __17-10664__ Chapter __13__

All Cases: Moving Creditor ___Augusta Village Homeowners' Association___ Date Case Filed __4/04/2017__

Nature of Relief Sought: ☑ Lift Stay   ☐ Annul Stay   ☐ Other (describe) _____

Chapter 13: Date of Confirmation Hearing _____ or Date Plan Confirmed __6/02/2017__

Chapter 7: ☐ No-Asset Report Filed on _____
        ☐ No-Asset Report not Filed, Date of Creditors Meeting _____

1. Collateral
   a. ☑ Home
   b. ☐ Car  Year, Make, and Model _____
   c. ☐ Other (describe) _____

2. Balance Owed as of Petition Date  $ _____Unknown_____
   Total of all other Liens against Collateral $_____Unknown_____

3. In chapter 13 cases, if a post-petition default is asserted in the motion, attach a payment history listing the amounts and dates of all payments received from the debtor(s) post-petition.

4. Estimated Value of Collateral (must be supplied in *all* cases)  $ _____317,000.00_____

5. Default
   a. ☐ Pre-Petition Default
      Number of months _____   Amount $ _____
   b. ☑ Post-Petition Default
      i. ☑ On direct payments to the moving creditor
         Number of months _____   Amount $ _____890.00_____ + accruing assessments, charges, attorney's fees, and costs.
      ii. ☐ On payments to the Standing Chapter 13 Trustee
         Number of months _____   Amount $ _____

6. Other Allegations
   a. ☑ Lack of Adequate Protection § 362(d)(1)
      i. ☐ No insurance
      ii. ☐ Taxes unpaid    Amount $ _____
      iii. ☐ Rapidly depreciating asset
      iv. ☑ Other (describe) ___Accruing lien for unpaid association assessments___
   b. ☑ No Equity and not Necessary for an Effective Reorganization § 362(d)(2)
   c. ☑ Other "Cause" § 362(d)(1)
      i. ☐ Bad Faith (describe) _____
      ii. ☐ Multiple Filings
      iii. ☑ Other (describe) ___Default under Movant's Declarations___
   d. Debtor's Statement of Intention regarding the Collateral
      i. ☐ Reaffirm   ii. ☐ Redeem   iii. ☐ Surrender   iv. ☑ No Statement of Intention Filed

Date: _____April 23, 2019_____     _____
                                                                  Counsel for Movant

(Rev. 12/21/09)

04/23/2019 6:23 AM  Aging Recap Report  AUGUSTA VILLAGE HOMEOWNERS ASSN.  Dates 01/01/2000 to 04/23/2019  Page: 2

AU-CLUB  Clubhouse Street
Clubhouse Street
Bolingbrook IL  60490

FirstService Residential
400 Campus Dr.
Suite 101
Collegeville PA  19426

| Unit | Space | Resident | Type | Date | CC | Description | Check | Amount | Balance |
|---|---|---|---|---|---|---|---|---|---|
| 0347 | 02 | Lawrence Webster | App# | 156685 | | | Beg Bal | | 0.00 |
| | | Jacquelyn Webster | Chg | 11/08/2018 | LE | AUG17 LEGAL 184388 | | 145.00 | 145.00 |
| | | 347 Clubhouse St | Chg | 11/08/2018 | A3 | JAN18 ASSOC FEE | | 330.00 | 475.00 |
| | | Bolingbrook IL 60490 | Chg | 11/08/2018 | LC | JAN18 LATE FEE | | 75.00 | 550.00 |
| | | | Chg | 11/08/2018 | LE | FEB18 LEGAL 189317 | | 150.00 | 700.00 |
| | | | Chg | 01/01/2019 | A3 | ASSOC FEES-ANNUAL | | 335.00 | 1,035.00 |
| | | | Chg | 01/15/2019 | LC | LATE FEES | | 75.00 | 1,110.00 |
| | | | Pay | 02/19/2019 | | Lckbx Pmt | 00003120 | -75.00 | 1,035.00 |
| | | | Cr | 04/23/2019 | LE | AUG17 184388 | | -145.00 | 890.00 |
| | | | | | | | End Bal | | 890.00 |

*4-23-19 BK legal fee    881.00   1,771.00*

MARY ANN STUKEL

Will County Recorder
Will County

R 2003182527 Page 1 of 69
PCI Date 07/29/2003 Time 13:08:59
Recording Fees: 74.00

# AUGUSTA VILLAGE

# DECLARATION OF COVENANTS

# CONDITIONS AND RESTRICTIONS

BOLINGBROOK, ILLINOIS

CH01/12205149.8

Village Property once the Village Property is conveyed to the Village by dedication and/or deed, subject to the provisions of this Declaration.

SECTION 4.6. <u>Failure of Association to Maintain, Repair or Replace</u>. In the event the Association fails to maintain, repair or replace Common Area and any improvements thereto or any improvements located within public rights-of-way within or abutting the Property that are the responsibility of the Association to maintain, the Village may (but shall not be required to) effect such maintenance, repairs or replacements and the Village shall be entitled to reimbursement in full from the Lot Owners for its costs, including reasonable attorneys' fees, incurred in connection therewith.

## ARTICLE 5.

## COVENANT FOR ASSESSMENTS

SECTION 5.1. <u>Creation of the Lien and Personal Obligation of Assessments</u>. Each Owner of any Lot, by acceptance of a deed therefor or possession thereof (whether or not it shall be so expressed in any such deed or other conveyance), is deemed personally and individually to covenant and agree to pay to the Association the Assessments authorized under this Declaration. In addition, Declarant hereby covenants and agrees for each Lot owned by Declarant within the Property to pay to the Association the Assessments authorized under this Declaration, subject to the provisions set forth in Sections 5.8 and 5.9. All such Assessments shall be fixed, established and collected from time to time as provided in this Declaration. The Assessments, together with interest thereon, attorneys' fees and costs of collection thereof, as hereinafter provided, shall be a charge on the land and shall be a continuing lien upon the Lot against which each such Assessment is made. Each such Assessment (and deficiency contributions, in the case of Declarant), together with such interest, costs and reasonable attorneys' fees, shall also be the personal obligation of the Owner of such Lot at the time when the assessment falls due. This personal obligation shall pass to each Owner's successors in title accepting a deed to or assignment of beneficial interest in any trust holding title to an Owner's Lot.

SECTION 5.2. <u>Base Annual Assessments</u>. The Association is authorized to levy Base Annual Assessments equally against all Lots subject to assessment, which shall be paid by the Owners of all Lots within the Property, to fund common expenses for the general benefit of all Owners. Base Annual Assessments shall be used for the following purposes:

(a) maintenance, repair, replacement and improvement of Common Area, and all landscaping or other improvements thereon, including without limitation any landscape buffers, detention ponds, swales, wetlands recharge areas and streams or brooks and any lighting, gazebos and other structures located thereon;

(b) maintenance, repair and replacement of any landscaping located within Dedicated Rights-of-Way that are the responsibility of the Association to maintain under the terms of this Declaration;

7

(c) maintenance, repair and replacement of any landscaping located within Dedicated Rights-of-Way that are the responsibility of the Village to maintain, to the extent such landscaping is not maintained, repaired or replaced by the Village;

(d) payment of premiums on insurance maintained by the Association pursuant to this Declaration; and

(e) to provide funds for the Association to carry on its duties or exercise its rights set forth herein or in its Articles of Incorporation or By-Laws or in the Illinois Not-For-Profit Corporation Act.

SECTION 5.3. <u>Special Assessments</u>. The Association is authorized to levy Special Assessments to cover unbudgeted expenses or expenses in excess of those budgeted, for the following purposes:

(a) defraying in full or in part the cost of any construction, reconstruction, repair or replacement of any improvement on Common Area or any improvements which are the responsibility of the Association, including without limitation the necessary fixtures, personal property or landscaping located on or related to Common Area, and all landscaping or other improvements thereon; and

(b) defraying in full or in part the cost of, and providing of funds to the Association, for carrying on any of its duties set forth in this Declaration or in its Articles of Incorporation or By-Laws or the Illinois Not-For-Profit Corporation Act.

Any Special Assessments shall have the assent of a majority of the votes of the Members that are subject to such Special Assessment voting in person or by proxy at a meeting duly called for such purpose, at which a quorum is present, written notice of which shall be sent to all such Members not less than five (5) days nor more than forty (40) days in advance of the meeting, setting forth the purpose of the meeting. Unless the Special Assessment specifies that it shall be applicable to a specified number of years, it shall be applicable only to the year enacted. In the event a Special Assessment is to be levied on less than all of the Lots located within the Property, such Special Assessment may, by the action described herein, be levied against only those Lots which benefit by such Special Assessment, in proportion to their benefit, and not against the other Lots in the Property.

SECTION 5.4. <u>Capital Contributions</u>. The Association is authorized to levy Capital Contributions against all Lots as provided herein. At the time of the initial sale of each Lot from Declarant to any Owner, such Owner shall pay to the Association a Capital Contribution, which shall be a sum equal to six (6) monthly payments of the Base Annual Assessment then in effect. The Capital Contributions shall be used by the Association to cover operating expenses and other expenses incurred by the Association pursuant to this Declaration and the By-Laws. The Capital Contributions for any Lot shall be levied only upon the sale by Declarant to an Owner and shall not be levied on any subsequent sales of the Lot.

8

CHI01/12205149.8

SECTION 5.5. **Basis for and Maximum Amount of Base Annual Assessments.** Until December 31st of the year in which occurs the conveyance of the first Lot to an Owner, the maximum Base Annual Assessment shall be $300.00.

(a) From and after January 1st of the year immediately following the conveyance of the first Lot to an Owner, the maximum Base Annual Assessment may be increased effective January 1st of each year by the Board of Directors of the Association (at any meeting of the Board of Directors duly convened at least thirty (30) days prior to said January effective date) without a vote of the membership, provided that any such increase shall not be greater than a ten percent (10%) increase over the maximum Assessment permitted for the year immediately preceding for such type of Assessment.

(b) From and after January 1st of the year immediately following the conveyance of the first Lot to an Owner, the Base Annual Assessment may be increased for any year by the Board of Directors of the Association at any time, over the maximum Base Annual Assessment permitted for the year immediately preceding, without the vote of the membership, if the same is necessary to pay the costs of (i) any increases in real estate taxes for Common Area over the prior year; or (ii) any increases in the maintenance of Common Area or any improvements thereon over the prior year; or (iii) any increases in premiums for insurance procured by the Association over the prior year.

(c) From and after January 1st of the year immediately following the conveyance of the first Lot to an Owner, the maximum Base Annual Assessment may be increased for the coming assessment year only for all succeeding assessment years effective January 1st of each year by the Board of Directors at any meeting of the Board of Directors (duly convened at least thirty (30) days prior to said January 1st effective date) in an amount greater than provided in subsections (a) or (b) hereof for the coming assessment year, provided that any such change shall have the assent of the majority of the votes of the Members that pays such Assessment voting in person or by proxy, at a meeting duly called for such purpose, at which a quorum is present, written notice of which will be sent to all Members that pay such Assessments not less than five (5) days nor more than forty (40) days in advance of the meeting, setting forth the purpose of the meeting.

(a) After consideration of future needs and expected expenditures of the Association, the Board of Directors may fix either type of Assessment in lesser amounts than the maximum Assessments permitted or may, in its discretion, require no Assessment of either type whatsoever for any year, but such action shall not limit or prohibit the Board of Directors from fixing such Assessments for any year(s) following on the basis of increases in the maximum Assessments permitted hereunder rather than the assessments so fixed.

9

CH01/12205149.8

SECTION 5.6.   **Reasonable Reserves.** The Association shall establish and maintain from Base Annual Assessments collected hereunder reasonable reserves for the costs of the maintenance, repair and replacement of those items which are the responsibility of the Association. The Association may establish and maintain such other reasonable reserves as the Board of Directors deems necessary and convenient which are consistent with the powers and duties of the Association.

SECTION 5.7.   **Uniform Rate of Assessment.** Base Annual Assessments must be fixed at a uniform rate for all Lots subject thereto. Base Annual Assessments may be collected on a quarterly basis or such other periodic basis as set by the Board of Directors.

SECTION 5.8.   **Assessment for Lots Owned by Declarant** Notwithstanding the foregoing provisions, Base Annual Assessments and Special Assessments for any Lots while (i) owned by Declarant and improved with a completed residence, but unoccupied by any tenant of Declarant, or (ii) owned by any party but occupied by Declarant and used as a model or a sale office, shall be limited to 25% of the amounts fixed with respect to such type of Lots owned by Owners other than Declarant. Prior to the completion of a residence on any Lot, (which shall mean the issuance of a certificate of occupancy therefor by the Village), such Lot shall be exempt from payment of any and all Assessments.

SECTION 5.9.   **Deficiency Contributions.** For every calendar year during which Declarant remains a Class B Member of the Association, Declarant shall contribute to the Association all funds in excess of the budgeted and collected Assessments which shall be necessary to defray the costs properly paid or incurred by it for the purposes for which Base Annual Assessments may be collected, all without limitation to the maximum amounts provided under Section 5.5 hereof. Declarant's contribution for the calendar year during which Declarant's Class B membership terminates shall be prorated to the date of such termination. For purposes hereof, the establishment of reserves pursuant to Section 5.6 does not constitute the payment or incurring of costs by the Association and Declarant's deficiency contribution shall not be required to be applied to the establishment of reserves.

SECTION 5.10.   **Date of Commencement of Annual Assessments; Due Dates.** Base Annual Assessments provided for herein shall commence for any Lot within the Property, or any land annexed to the Property, on the day of the conveyance of the first Lot of such type in the Property and shall be prorated for the month of said conveyance. The Board of Directors shall fix the amount of such Assessments at least thirty (30) days in advance of each annual Assessment period, and in lieu thereof, the amount of each type of such Assessment for the prior year shall be the fixed amount. Written notice of any changed amount of the such Assessments shall be sent to every Owner subject thereto, but failure to do so shall not invalidate the changed Assessments. Base Annual Assessments shall be payable in quarterly installment or such other periodic basis set by the Board of Directors.

SECTION 5.11.   **Certificate of Payment.** The Association shall, upon demand, furnish to any Owner liable for said Assessments, a certificate in writing signed by an officer of the

10

Association, setting forth whether the Assessments on a specified Lot have been paid and the amount of the delinquency, if any. A reasonable charge may be made by the Board of Directors for the issuance of such certificates. Such certificates shall be conclusive evidence that any Assessment therein stated to have been paid has in fact been paid. No charge shall be made for issuing from time to time said certificates to Declarant on Lots then owned by Declarant.

SECTION 5.12. <u>Delinquency in Payment of Assessments</u>. Any Assessment provided for in this Declaration which is not paid when due, shall be delinquent. With respect to each Assessment not paid within fifteen (15) days after its due date, the Association may, at its election, require the Owner to pay a "late charge" in a sum to be determined by the Association and applied uniformly. If any such Assessment is not paid within thirty (30) days after the delinquency date, the Assessment shall bear interest from the date of delinquency at the highest rate permitted by Illinois law, and the Association may, at its option, bring an action at law against the Owner personally obligated to pay the same, or foreclose the lien (provided for in Section 6.1 hereof) against the Lot, and there shall be added to the amount of such Assessment the late charge, the costs of preparing and filing a Complaint in such action and reasonable attorneys' fees, and in the event a judgment is obtained, such judgment shall include all Assessments accrued from date of suit to judgment, increased by such late charges, costs and fees, plus interest. Each Owner vests in the Association or its assigns, the right and power to bring all actions at law or lien foreclosures against such Owner for the collection of such delinquent assessments

SECTION 5.13. <u>Suspension of Voting Rights Due to Unpaid Assessments</u>. The Association is authorized to suspend the voting rights of an Owner for any period during which any Assessment against such Owner's Lot remains unpaid and delinquent, and for a period not to exceed thirty (30) days for any single infraction of the published rules and regulations of the Association, provided that any suspension of such voting rights, except for failure to pay Assessments, shall be made only by the Association or a duly appointed committee thereof, after notice and hearing given and held in accordance with the By-Laws or rules and regulations of the Association. The foregoing shall not apply to unfunded deficiency contributions of the Declarant under Section 5.9.

SECTION 5.14. <u>Waiver of Use</u>. No Member may exempt himself from personal liability for Assessments duly levied by the Association nor release the Lot owned by him from the liens and charges hereof, by waiver of the use and enjoyment of Common Area or by abandonment of his Lot.

SECTION 5.15. <u>Subordination of the Lien to Mortgages</u>. The lien of the Assessments provided for herein shall be subordinate to the lien of any first mortgage or trust deed. Sale or transfer of any Lot shall not affect the Assessment lien. However, the sale or transfer of any Lot pursuant to the foreclosure of a mortgage or trust deed or any proceeding or deed in lieu thereof shall extinguish the lien of such Assessments as to payments which become due prior to such sale or transfer. No sale or transfer shall relieve such Lot from liability for any Assessments thereafter becoming due or from the lien thereof.

11

CH01/12205149.8

## ARTICLE 6.

## PROPERTY RIGHTS

SECTION 6.1.   **Members' Easements over Common Area.**  Every Member shall have a right and easement for ingress and egress over and across, and for use of and enjoyment in and to, Common Area and the improvements thereon, and such easements shall be appurtenant to and shall pass with the title to every Lot.  Reference in the respective deeds of conveyance, or in any mortgage or trust deed or other evidence of obligation, to the easements and covenants herein described shall be sufficient to create and reserve such easements and covenants to the respective grantees, mortgagees or trustees of said parcels as fully and completely as though said easements and covenants were fully recited and set forth in their entirety in such documents.  Said right of easement for ingress and egress over and across, and of enjoyment in and to, Common Area and improvements located thereon shall be subject to the following provisions:

(a) The right of the Association, in accordance with its Articles of Incorporation and By-Laws, to borrow money for the purposes of improving or reconstructing Common Area and improvements thereto and in aid thereof to mortgage said Common Area (or a portion thereof).

(b) The right of the Association to declare or grant easements and licenses and to dedicate or transfer all or any part of Common Area to any public agency, authority, or public or private utility for such purposes and subject to such conditions as may be agreed to by the Members.  No such dedication or transfer shall be effective unless an instrument has been recorded, signed by the Association and authorized by the assent of at least sixty-seven percent (67%) or more of the votes of each class of Members present in person or by proxy and entitled to vote at a meeting duly called for such purpose at which a quorum is present, written notice of which is mailed to all Members not less than five (5) days nor more than forty (40) days in advance of the meeting, setting forth the purposes of the meeting.

(c) The right of the Association to establish uniform rules and regulations (including fines) pertaining to the use of Common Area; provided, however, that the Association shall not limit or prohibit the public use of pathways located within the Property.

(d) The right of the Association to suspend an Owner's right to use any improvements located within Common Area (i) for any period during which any charge against such Owner's Lot remains delinquent; and (ii) for a period not to exceed thirty (30) days for a single violation or for a longer period in the case of any continuing violation, of this Declaration or the rules and regulations of the Association after written notice thereof.

12

CH01/12205149.3